**UNIVERSAL MARITIME SERVICE CORPORATION, Petitioner,**

v.

**Louis SPITALIERI, and Director, Office of Workers' Compensation Programs, Respondents.**

**Docket No. 99–4175.**

United States Court of Appeals, Second Circuit.

Argued May 30, 2000.

Decided Sept. 21, 2000.

---

Lawrence P. Postol, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for Petitioner.

Philip J. Rooney Israel, Adler, Ronca & Gucciardo, New York, N.Y., for Respondent Spitalieri.

Andrew D. Auerbach, Attorney Office of the Solicitor, U.S. Department of Labor, Washington, D.C., Henry L. Solano, Solicitor, Carol A. De Deo, Associate Solicitor, Mark Reinhalter, Senior Attorney, for Respondent Director of Workers' Compensation Programs.

Before PARKER and KATZMANN, Circuit Judges, and BRIEANT, District Judge[*].

BRIEANT, District Judge:

Petitioner Universal Maritime Service Corporation (the "Employer") seeks review of a final order of the Benefits Review Board (the "Board") established under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 (the "Act," or "LHWCA"), issued October 7, 1999, which terminated the temporary total disability payments of Respondent employee Louis Spitalieri ("Claimant") but declined to allow the employer a credit for overpayment against a schedule award for a partial permanent hearing loss arising out of the same injury. The Board opinion *en banc* with two Administrative Appeals Judges dissenting is reported in 33 BRBS 164, 1999 WL 1021572 (DOL Ben. Rev. Bd. Oct. 7, 1999).

*The Issue Presented*

Is an employer who paid a claimant Workers' Compensation benefits for a temporary total disability during a period after he recovered from his injuries and became capable of returning to his usual employment entitled to a credit for such overpayment to be applied to a schedule award for a permanent partial binaural hearing loss of 6.9% arising out of the same accident? The Administrative Law Judge answered the question in the affir-

mative. The Board reversed as a matter of law, holding that "termination" of benefits is not a "decrease," and 33 U.S.C. § 922, by negative implication, prohibited a set-off. We have jurisdiction under 33 U.S.C. § 921(b)(3). We reverse.

*Procedural History*

On April 10, 1992, while working as a longshoreman at the Employer's facility at Red Hook in Brooklyn, New York, Claimant was injured when a U-shaped box he was in was flipped by a crane, and he was thrown to the ground. On November 15, 1993, Administrative Law Judge Robert S. Amery found that as of that date and since the accident, Claimant had a temporary total disability, which had not yet reached maximum medical improvement. Specifically, he had head, neck, back and left leg injuries, in addition to a partial hearing loss and psychiatric problems, all caused by the April 10, 1992 injury. The Administrative Law Judge awarded compensation, declining to find a permanent disability. The Employer paid the weekly award of two-thirds of the Claimant's average weekly wage at the time of the injury, as required by the Act.

Thereafter, on July 10, 1996, armed with four days of surveillance videotapes, Employer, while still paying benefits, filed a modification request based on a change of condition, namely that Claimant had reached maximum medical improvement and was no longer disabled. A full hearing was held before Administrative Law Judge Paul H. Teitler, who issued his findings and conclusions on January 15, 1998. He found that a change of condition had been established by the employer, that Claimant had reached maximum medical improvement on August 31, 1994,[1] and was not temporarily totally disabled after that date, and was able to return to his usual employment. The Administrative Law Judge concluded that Claimant was not

---

[*] Hon. Charles L. Brieant, Judge United States District Court for the Southern District of New York, sitting by designation.

1. The Board on review changed this date to February 21, 1996. Neither side seeks to review this finding.

eligible for continuing benefits and that the Employer was entitled to a credit for benefits paid since the date of maximum medical improvement. He noted that, "By virtue of finding a change in conditions had occurred and Claimant was no longer entitled to benefits, it was not necessary to address whether a mistake in fact occurred. However, such an analysis would have yielded the same result based upon the newly submitted evidence." Joint Appendix at 67.

Administrative Law Judge Teitler ordered that the Employer was "entitled to a credit for payments made to Claimant from the date of maximum medical improvement." By a decision and order on reconsideration issued February 6, 1998, the Administrative Law Judge awarded a scheduled disability to Claimant, against that credit, not disputed by the Employer, for a permanent partial binaural hearing loss of 6.9 percent, arising out of the same April 10, 1992 accident, computed at $7,465.00, and held that, "[t]his award shall be offset by any credit that the Employer may have accrued [as a result of overpayment for the temporary total disability]." Joint Appendix at 40.

Claimant appealed to the Benefits Review Board. By a panel decision issued February 23, 1999, reported at 33 BRBS 6, 1999 WL 1021572, at *2 (DOL Ben. Rev. Bd. Oct. 7, 1999), the Board affirmed the determination of the Administrative Law Judge that Claimant was no longer disabled, corrected the date of maximum medical improvement as noted above, and, in light of its construction and application of the relevant statute, 33 U.S.C. § 922, discussed below, held that the Administrative Law Judge had erred as a matter of law in granting the Employer a credit for the overpaid benefits against the scheduled award for the hearing loss. This decision became the subject of a Decision and Order on Reconsideration *en banc* before the entire membership of the Benefits Review Board, which issued the Decision and Order of October 7, 1999, which is

before this Court for review on this appeal. By that decision, with two Administrative Appeals Judges dissenting, the Board held that "[s]ince the decision on modification terminated plaintiff's temporary total disability benefits, and did not decrease them, and as the plain language of [33 U.S.C. § 922] prohibits an order on modification from affecting compensation previously paid, the termination cannot be effective prior to the date of the decision on modification." 33 BRBS 164, 1999 WL 1021572, at *2.

*Discussion*

The relevant provision of the statute is as follows:

§ 922. Modification of awards

Upon his own initiative, or upon the application of any party in interest ... on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case ... [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the deputy commissioner with the approval of the Secretary. This section does not authorize the modification of settlements.

The powers vested in the Deputy Commissioner are now vested in the District Director. See 20 C.F.R. § 701.301(a)(7). Administrative Law Judges have been authorized to adjudicate disputes under the act.

The majority of the Board, sitting *en banc*, concluded that termination of benefits was not a "decrease" within the meaning of the section, and therefore the termination of compensation could not be made effective prior to the date of the Administrative Law Judge's order.

■ This appeal presents the issue of whether under 33 U.S.C. § 922 an employer who overpaid a claimant who was feigning temporary total disability is nevertheless liable to pay additional compensation for a permanent partial hearing loss resulting from the same injury. Our review is limited to errors of law. The findings of fact in this case are supported by substantial evidence; no party to this appeal claims otherwise. The petition for review presents a question of law which we review *de novo*. *See Voris v. Eikel*, 346 U.S. 328, 333–34, 74 S.Ct. 88, 98 L.Ed. 5 (1953); *Sealand Terminals, Inc. v. Gasparic*, 7 F.3d 321, 323 (2d Cir.1993). When a statute is ambiguous, the administrative construction of statutory terms by the Respondent Director of the Office of Workers' Compensation Programs, if reasonable and consistent with Congressional intent, is entitled to deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 & nn. 9, 11, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Rasmussen v. General Dynamics Corp.*, 993 F.2d 1014, 1016 (2d Cir.1993); *Director, Office of Workers' Compensation Programs v. General Dynamics Corporation ("Bergeron")*, 982 F.2d 790, 793–94 (2d Cir.1992). The Board's construction is entitled to no special deference. *See Rasmussen*, 993 F.2d at 1016.

We conclude that the Director's construction of § 922 in this case is reasonable and consistent with the statutory structure and purpose and accordingly is entitled to the deference ordinarily afforded to the official charged by Congress with the responsibility for administering a benefits program. *See Bergeron*, 982 F.2d 790, 793–95. We find that the Board's "insistence on what seems to us a 'narrowly technical and impractical construction,' " *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 297, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995), of the term "decrease" is inconsistent with the purpose of the statute.

■ The Director's practical construction of § 922 of the statute authorizes the result reached in this case by Administrative Law Judge Teitler and supported in this Court by the Director. The statute grants to an Administrative Law Judge when reviewing a compensation order in a § 922 modification proceeding involving either a change in conditions or a mistake of fact the power to "issue a new compensation order which may terminate, continue, reinstate, increase or decrease such compensation." *Id.* The words in this statutory series are intended to and do comprise all possible responses to a claim of change in conditions or mistake of fact. The statute goes on to provide that a new order issued in such a situation "shall not affect any compensation previously paid." *Id.* This statutory direction is modified by two exceptions: if the compensation rate is increased, the new order may be made "effective from the date of the injury," thus permitting a claimant to receive increased compensation for past periods of disability. *Id.* The other exception, stated in the same sentence, reads "and if any part of the compensation due or to become due is unpaid an award decreasing the compensation rate may be made effective from the date of injury and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation . . . ." *Id.* This exception permits offset against *unpaid* compensation, even though the statute has been construed to forbid an employer from recovering back compensation which has

previously been paid. *See Lennon v. Waterfront Transport*, 20 F.3d 658, 661 (5th Cir.1994) (employer not entitled to recoup overpaid benefits under LHWCA, and employer's right to due process not violated thereby).

In this case, the Administrative Law Judge found, as modified by the Board, that Claimant was no longer temporarily totally disabled and could return to his former employment on February 21, 1996. The Employer had paid for temporary total disability through January 20, 1998, at $540.99 per week, amounting to approximately $54,000.00 to which he was not entitled. The Administrative Law Judge also found that arising out of the same accident, Claimant was entitled to a schedule award of $7,465.00 for his permanent partial hearing loss.

■■■ We hold that the statute authorizes this latter amount to be set off against the excess payment of approximately $54,000. We agree with Petitioner and the Director that the exception for a "decrease" in the second sentence of § 922 should be read to include a decrease to zero, i.e., a termination of benefits. By the same token, we would read "increase" to include modification orders which "award" compensation. We do not believe that a "termination" of benefits is somehow different from a "reduction" of benefits, in this case, to zero. Therefore we reject as unreasonable the effort of the Board to find a negative implication in the statute to the effect that the provisions applicable to a decrease do not extend to a termination.

■■■ To hold otherwise would counter normal English usage and have no relation to the statutory purpose, which is to compensate employees an amount fixed under the statute for their injuries, and to cease payment when circumstances so require. *See Rambo*, 515 U.S. at 298, 115 S.Ct. 2144 (purpose of the LHWCA is "to compensate employees ... for wage-earning capacity lost because of injury[.] [W]here that wage-earning capacity has

been ... restored, or improved, the basis for compensation changes and the statutory scheme allows for modification.") Where the literal application of statutory language "will produce a result demonstrably at odds with the intentions of its drafters, ... it is the intention of the legislators, rather than the strict language, that controls." *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir.1995). Thus, refusal to apply a credit for overpayment of an unscheduled award against a schedule award arising out of the same accident has no basis in common sense or in the statute.

■■■ We also hold that the modification of Claimant's award on the ground of a change in conditions may be made effective from the date of that change in conditions on February 21, 1996, the date when Claimant was no longer temporarily totally disabled. Although Section 922 states that a decrease in the compensation rate may be made effective "from the date of the injury," we hold that the statute grants an Administrative Law Judge the broad authority to make a modification effective from the date when an injury occurred and any date after the injury when a change in conditions occurs. By granting the ALJ the authority to modify an award on the ground of a change in conditions, the statute authorizes the ALJ to modify an award as of a date subsequent to the initial injury. We see no reason to conclude that the award increases and decreases permitted under the exceptions must be made from the specific date of injury or not at all. Such a narrow interpretation would limit award increases and decreases that affect compensation previously paid to those based on mistakes in determinations of fact, and render the change in conditions language inapplicable to the exceptions. In the absence of any indication that this was the intention of the legislators, we do not adopt such a limiting interpretation. We conclude instead that the statutory grant of authority to the Administrative Law Judge to make modifications to com-

pensation awards includes the authority to make modifications effective from any date after the injury where there is a change in condition. *See, e.g., Lussier v. Runyon,* 50 F.3d 1103, 1108 (1st Cir.1995) (grant of greater power logically includes grant of lesser power); *American Hospital Assoc. v. Bowen,* 834 F.2d 1037, 1052 (D.C.Cir. 1987) (same).

Claimant appears to argue, relying on *Jarka Corp. v. Hughes,* 299 F.2d 534, 536–37 (2d Cir.1962), that the exceptions in § 922 apply to mistakes of fact but not to changes in condition, and therefore that no retroactive modification may be made in this case based on a change in condition. This argument is without merit. The language in *Jarka* does not affect our interpretation of the statute because it is dicta and it does not address the issue we are concerned with here. *Jarka* addressed an inconsistency in a deputy commissioner's order where the deputy commissioner dated a modification to the date of injury, but called it a modification for a change of condition. This Court stated:

> [T]he distinction within [§ 922] between change in condition and mistake of fact only makes sense if the language speaking of retroactivity to the date of the injury is limited to modifications based upon mistake of fact.... In any case where a Deputy Commissioner would modify a prior award retroactively to the date of injury because he evaluates the claimant's condition differently, it necessarily follows that he believes that the prior determination of condition was incorrect and based upon a mistake of fact, and he cannot be making the new order because of a change of condition.

*Id.* This passage does not relate to the instant case because we are concerned here with a change of condition, not a mistake of fact. The passage states the logical conclusion that an award modified to the date of the injury must depend upon a mistake of fact. Here, the award was not modified to the date of injury, but rather to a subsequent date, because it was based on a change of condition.

In *McCord v. Cephas,* 532 F.2d 1377 (D.C.Cir.1976), the Court of Appeals for the District of Columbia Circuit indicated that it was within the discretion of the ALJ to make his decision retroactive from the date of the ALJ's decision. *See id.* at 1381 ("the question [on remand] remains whether the decision should be retrospective, freeing the petitioner McCord of all liability, or prospective only from the date that such decision shall have been rendered, thus preserving entitlement in decedent's dependents to benefits up to that time"). We likewise conclude that the ALJ had the discretion to modify the prior award and make the modification retroactive from the date of the ALJ's decision, to the date of Claimant's partial recovery. To give the modification retroactive effect, we also conclude, for the reasons stated above, that the excess payment made after Claimant's recovery from his temporary total disability may offset the award made for Claimant's permanent partial disability. *McCord,* which held that "under the terms of [§ 922], it is within the discretion of the Administrative Law Judge, subject to review by the Board, to determine whether according retroactive effect to a correcting order will 'render justice under the act,' demonstrates the true intention of the statute-to 'render justice.'" 532 F.2d 1377 at 1381. To construe the statute so as to not permit a credit for retroactive termination of benefits would fail to render justice, especially where, as here, the overpayment is tinged with fraud on the part of Claimant.

Section 922 of the LHWCA was amended in 1934, when the exceptions clause was added, as well as the provision for modification "because of a mistake in determination of fact." Act of May 26, 1934, Ch. 354 § 5, 48 Stat. 806, 807. Both the House and Senate Committees reporting the legislation advised that "the amendment also permits an increase or decrease in the compensation under a modifying award

 

when changed conditions or a mistake in a determination of fact makes such modification desirable in order to render justice under the Act, such modifying award to date from the time of the accident." S.Rep. No. 73–588, at 3–4 (1934); H.R.Rep. No. 73–1244, at 4 (1934). The statute was amended again in 1938. Act of June 25, 1938, Ch. 685, § 10, 52 Stat. 1167. This amendment permitted review of a case at any time prior to one year after the rejection of a claim, and authorized the award of compensation. Amendments of a purely formal nature were made to the Act in 1984. Section 922, however, has remained unchanged since 1938. The Director represents that it has "not been the source of controversy or misunderstanding" and that the Board's interpretation of the statute in this case is "contrary to longstanding actual implementation of the provision." Director Br. at 18; *cf. McCord*, 532 F.2d 1377.

■ We agree with the Director that there is nothing in the legislative history of the statute which justifies the narrow construction placed on it by the Board in this case that "decrease" under the statute does not include a termination of benefits. In *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. at 291, 115 S.Ct. 2144, the Supreme Court rejected an attempt to narrow the authority afforded an ALJ by the statute. Where an ALJ has broad authority to "terminate, continue, reinstate, increase or decrease such compensation, or award compensation," 33 U.S.C. § 922, the interpretation as put forth by the Board's decision would give the statutory language "impractical construction." *Rambo*, 515 U.S. at 298, 115 S.Ct. 2144. The authority of an ALJ to modify existing orders based on mistakes in fact or changes in condition under § 922 is broad. *See O'Keeffe v. Aerojet–General Shipyards, Inc.* 404 U.S. 254, 255–56, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971); *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 464–65, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Rambo*, 515 U.S. at 291, 115 S.Ct. 2144. We conclude that the

power to give credit to an employer for overpayment where there has been a termination of benefits falls under this authority.

Accordingly, the order appealed from is reversed. The award of counsel fees to Claimant is vacated.